UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
GRAND MANOR HEALTH RELATED FACILITY, :
INC.,
                                           :

                      Plaintiff,       :

       -against-                 :
                                             : 12 Civ. 4916 (JGK)
HAMILTON EQUITIES COMPANY, HAMILTON :
EQUITIES, INC., ROBERT NOVA, SUZAN :
CHAIT-GRANDT; MACRON & COWHEY, P.C., :
and JOHN MACRON, :

                    Defendants.      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
HAMILTON EQUITIES COMPANY, HAMILTON :
EQUITIES, INC., ROBERT NOVA, SUZAN :
CHAIT-GRANDT; MACRON & COWHEY, P.C., :
and JOHN MACRON, :
                    Defendants/       :
                    Interpleading  Plaintiffs, :

       -against-                 :

BERKADIA COMMERCIAL MORTGAGE, LLC :
and UNITED STATES DEPARTMENT OF :
HOUSING ND URBAN DEVELOPMENT, :

                    Interpleaded     :
                    Defendants.     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
HAMILTON EQUITIES COMPANY, HAMILTON :
EQUITIES, INC., ROBERT NOVA, SUZAN :
CHAIT-GRANDT; MACRON & COWHEY, P.C., :
and JOHN MACRON, :

                    Defendants/       :
                    Third Party Plaintiffs, :

       -against-                 :

GRAND MANOR HEALTH RELATED FACILITY, :
GARFUNKEL WILD, P.C., ROY W. :
BREITENBACH, ESQ. and MARTIN LIEBMAN, :

                    Third Party Defendants. :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

---

# PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

---

GARFUNKEL WILD, P.C.
*Attorneys for Plaintiff / Third Party Defendants*
111 Great Neck Road
Great Neck, New York  11021
(516) 393-2200

Of Counsel:
Roy W. Breitenbach, Esq.
Jason Hsi, Esq.

2321469v.4

## PRELIMINARY STATEMENT

In opposition to Grand Manor's motion for summary judgment, Hamilton Equities argues that HUD properly authorized the distribution of what it characterizes as $213,334 in "surplus" Reserve for Replacement Fund monies, and that HUD cannot recover such monies 1½ years later, even if the distribution was erroneous.  Based upon the false premise that it owns the $213,334 outright, Hamilton Equities also argues that it is entitled to certain due process rights before it can now be deprived of its property.

None of Defendants' imagined arguments, however, are rooted in fact or law, or otherwise raise an issue of material fact necessary to defeat the instant motion.  Indeed, there is no evidence to support Defendants' claim that HUD's Reserve for Replacement Fund had any "surplus" monies.  Nor is there any logic to Defendants' wishful thinking that, even if HUD had accumulated any surplus in the Reserve for Replacement Fund, HUD would simply distribute it to Defendants for their personal use, an act contrary to the very purpose for which Reserve for Replacement Funds are required by HUD, in accordance with federal regulations, to be established and maintained.

Moreover, Defendants entirely fail to address the limited applicability, if any, of the defense of equitable estoppel, despite substantial reliance thereon for Defendants' arguments seeking to keep the $213,334.  Defendants also fail to adequately justify their claims of an alleged due process violation based upon the admission, and controlling directive, of certain HUD letters (of which Defendant Robert Nova affirmatively confirms receipt in his affidavit) reversing their prior mistaken correspondence.  Finally, Defendants' unsupportable claim that there might be prejudice from the lack of discovery was, in all events, expressly rejected during the last court conference on November 14, 2012.

In sum, Defendants cannot obfuscate the simple and undisputed fact that HUD is the sole authority with the power to establish, maintain, and disburse Reserve for Replacement Fund monies.  Regardless of what Hamilton Equities argues HUD may have erroneously stated in the past, HUD has now directed that all $640,000 of the Reserve for Replacement Fund monies be paid to G. Fazio for the sprinkler improvement and fire alarm project.  Defendants' opposition, which merely attempts to muddy the waters with inaccurate and inapposite historical context, does not create any issues of material fact.

Accordingly, and for all the reasons set forth in HUD and Grand Manor's moving papers and below, Grand Manor's motion for summary judgment should be granted declaring that Defendants must immediately turn over the $213,334 Reserve for Replacement Fund monies to the HUD-approved contractor, G. Fazio, in accordance with HUD's directives, for payment of the governmentally-mandated sprinkler improvement and fire alarm project.

## ARGUMENT

### HAMILTON EQUITIES FAILS TO RAISE ANY ISSUE OF MATERIAL FACT WITH RESPECT TO THE RESERVE FOR REPLACEMENT FUND MONIES, WHICH MUST BE APPLIED TOWARD THE SPRINKLER PROJECT

**A.    HUD Never Authorized The Distribution Of $213,334 In "Surplus" Monies To Defendants; Rather, HUD Disbursed The Monies For The Project**

Defendants assert that the Regulatory Agreement allows HUD to authorize the release of Reserve for Replacement Fund monies "for any other purpose," including disbursement to the Defendants of any "surplus" monies for personal reasons.  This *ex post facto* attempt to conjure support for HUD's initial error is misplaced for several reasons.

As a preliminary matter, Hamilton Equities' broad, out-of-context interpretation of the Regulatory Agreement is simply incorrect and directly conflicts with the purpose of the Reserve for Replacement Fund, which is mandated by law to be used for significant repairs, replacements, or other capital improvements at the Premises so as to secure and collateralize HUD's interests in the continuing operation of the facility. *See* Memorandum of Law in Support, Point I(A)(i); *see generally* 24 C.F.R. § 891.405. Indeed, HUD would never jeopardize its security interest in the operation of Grand Manor solely to benefit Hamilton Equities, especially where Hamilton Equities has now demonstrated a willingness to ignore its contractual obligations and default on the payment of its mortgage with Berkadia.

Even assuming HUD were authorized to make such a "surplus" distribution of Reserve for Replacement Fund monies, there is no evidence here of such an occurrence. In fact, the evidence points to the exact opposite conclusion – that HUD never authorized any "surplus" distribution – where only Grand Manor made an application for the release of monies from the Reserve for Replacement Fund for the limited purposes of the governmentally mandated sprinkler improvement and fire alarm project. *See* Liebman Aff., Ex. 5. Because neither Grand Manor nor Hamilton Equities ever applied to HUD to reduce the Reserve for Replacement Fund for a "surplus" of monies, the monies were never released on account of any alleged surplus. Rather, HUD authorized the release of only $640,000 for the project, despite the fact that Grand Manor applied to HUD for the release of $1.3 million. *Id.* This shortage militates against any finding of a purported "surplus" of monies.

Therefore, contrary to Hamilton Equities' unsupported characterization of the $213,334 as "surplus" monies, the only dispositive view of the $213,334 Reserve for Replacement Fund monies is that currently proffered by HUD, which insists that the $213,334 be applied toward the

sprinkler improvement and fire alarm project.   *See generally*, HUD's Motion to Dismiss, Affidavit of Sean Kelly, dated October 12, 2012, ¶ 4.

**B.      HUD Is Not Estopped From Recovering The**
         **$213,334 Improperly Retained By Defendants**

Hamilton Equities alternatively argues that, even if the December 2010 distribution of $213,334 was erroneous, HUD cannot now recover the Reserve for Replacement Fund monies based upon a conflicting reversal of action a year and a half later.   In essence, the underlying basis of Hamilton Equities' opposition arguments is the defense of equitable estoppel against HUD.

For all the reasons set forth in Grand Manor's moving papers, however, equitable estoppel does not lie against HUD, a government agency.   *See* Memorandum of Law, Point I(A)(iii). Significantly, Hamilton Equities' opposition wholly fails to address the exceptional nature of the defense of equitable estoppel against a government agency.   *See Mayayev v. Metro. Transp. Auth. Bus*, 74 A.D.3d 910, 904 N.Y.S.2d 84, 85 (2d Dep't 2010) ("The doctrine of estoppel will be applied against governmental agencies only in exceptional cases").   Hamilton Equities fails to address, among other things, (1) how they relied on HUD's conduct in such a manner as to *worsen* their position, especially where the monies are to be used solely for a governmentally mandated project that will improve and maintain their own property; and (2) that their reliance was reasonable in that they did not know nor should they have known that HUD's conduct was misleading. *FHM Constructors, Inc. v. Vill. of Canton Hous. Auth.*, 779 F. Supp. 677, 682 (N.D.N.Y. 1992) (internal citations omitted; emphasis added).   Furthermore, Defendants do not assert "affirmative misconduct" by HUD, an essential requirement for

4

estoppel against a government agency. Instead, Hamilton Equities actually argues that HUD properly released the "surplus" monies to them. *See* Nova Aff., ¶¶ 12-13.

Rather than deal with the elements of estoppel, Hamilton Equities attempts to divert the Court's attention with its purported need for discovery into why the alleged error occurred. *See* Memorandum in Opposition, p. 5.  Such factual issues are irrelevant and inapposite to the application of the equitable estoppel defense, and thus should not serve as a bar to Grand Manor's motion for summary judgment.  In fact, this Court already recognized the Defendants' misguided attempt to seek unnecessary discovery from HUD by staying the depositions of HUD representatives during the court conference held on November 14, 2012.

Therefore, where Defendants' arguments are premised entirely on the defense of equitable estoppel against a government agency, and where Defendants fail to satisfy any of the elements necessary to sustain such a defense, Grand Manor's motion for summary judgment should be granted as a matter of law.

**C.      Defendants Are Not Entitled To Due Process
In The Absence Of Any Protectable Property Interest**

    (i)      Defendants Have No Protectable Property
Interest In Reserve For Replacement Fund Monies

Defendants also argue that they are entitled to due process concerning the $213,334 Reserve for Replacement Fund monies in order to adequately challenge the purported hearsay evidence submitted by HUD.  This argument, however, erroneously presumes that Defendants have a protectable property interest in the $213,334.  They certainly do not.

The deprivation of a procedural right to be heard "is not actionable when there is no protected right at stake." *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 193 (2d Cir. 1994).  "It is

2321469v.4

well-settled that one cannot have a property interest that is protected by due process if the matter that gives rise to that interest is discretionary…. Where entitlement to a benefit…is subject to agency discretion, a party's expectations can only rise to a protected property interest where the agency's discretion is so narrowly circumscribed as to virtually assure conferral of the benefit." *Deane v. City of New York Dept. of Bldgs.*, 177 Misc. 2d 687, 696, 677 N.Y.S.2d 416, 422 (Sup. Ct. N.Y. Co. 1998).

There is nothing here that "virtually assures" Defendants of any alleged surplus Reserve for Replacement Fund monies stemming from Grand Manor's application to HUD for the fire alarm and sprinkler improvement project. Indeed, the monies released were wholly discretionary on HUD's part, and were to be applied exclusively for the sprinkler improvement and fire alarm project. A similar conclusion that Defendants have no protectable property interest in the $213,334 may be reached under New York State Lien Law, which provides that all reserve for replacement funds held or disbursed by HUD for the sprinkler improvement and fire alarm project constitute trust funds. Defendants' superficial attempt to sidestep the application of the Lien Law and divert funds to itself (based upon a HUD mistake that has since been corrected) not only ignores the express language of the statute, but is clearly designed to avoid the crucial and protective purpose of the statute.

Thus, where Defendants have no protectable property interest in the Reserve for Replacement Fund monies, including the $213,334, and the defense of equitable estoppel is not available against HUD, an agency of the federal government, Defendants are not entitled to any corresponding due process rights. Accordingly, Defendants' assertions that HUD somehow erroneously deprived them of their property without due process is wholly without merit.

6

(ii)    Even If Entitled To Due Process, Defendants Have Already
        Been Afforded An Adequate Opportunity To Be Heard

Even if Defendants were entitled to due process, such an argument would nonetheless fail because Defendants have already been afforded an adequate opportunity to be heard and to respond to HUD's June 14, 2012 correspondence.  Defendants were afforded due process when Defendants first corresponded with Edward Chlystek in June 2012, including telephone and written submission of their arguments against returning the $213,334.  *See* Nova Aff., ¶¶ 19-21. Indeed, Mr. Chlystek acknowledged Defendants' position, yet nonetheless directed Defendants to return the Reserve for Replacement Fund monies. *See* Liebman Aff., ¶¶ 41-42, Exs. 11-12.

Furthermore, Defendants are currently being afforded due process before this Court, as the Court has, in essence, granted Defendants a pre-deprivation hearing upon the denial of Grand Manor's motion to deposit, and allowed Defendants to oppose Grand Manor's motion.  The fact that this Court denied the Defendants the opportunity to depose HUD's witnesses – even assuming such a notice were proper, although it was not – does not warrant any different result. Discovery of the reasons underlying HUD's June 2012 purported error are irrelevant.  Indeed, as argued in Grand Manor's moving papers, Defendants were not reasonable in relying on any mistakes by HUD, as knowledge of the applicable regulations is presumed. *See* Memorandum of Law, Point I(A)(iii).  In any event, HUD's current position, explained to Defendants as early as June 2012, now governs.

(iii)    HUD's Letters Are Not Inadmissible Hearsay

Finally, Defendants' substantive argument that the June 14, 2012 letters constitute inadmissible hearsay is unavailing.    Such letters are offered to substantiate HUD's current position and to explain its rationale in this matter, and are not offered solely for the truth of the

7

2321469v.4

matters contained therein.  Even if accepted for the truth of the matters therein, the reliability and acceptance of such letters, which have also been proffered by HUD on their motion to dismiss (*see* Kelly Declaration, dated October 12, 2012), would not constitute a due process violation. *See People v. Cotto,* 169 Misc. 2d 194, 202, 642 N.Y.S.2d 790, 796 (Sup. Ct. N.Y. Co. 1996) (finding that the out-of-court statements "are sufficiently reliable that due process is not violated by their admission").

## CONCLUSION

For all the reasons set forth above, Grand Manor's motion for summary judgment should be granted as a matter of law declaring that Defendants must immediately turn over the $213,334 Reserve for Replacement Fund monies to the HUD-approved contractor for payment of the governmentally mandated sprinkler improvement and fire alarm project.

Dated: Great Neck, New York
          December 4, 2012

GARFUNKEL WILD, P.C.
*Attorneys For Plaintiff / Third Party Defendants*

By:         /s/ Roy W. Breitenbach
                  Roy W. Breitenbach
                  Jason Hsi
          111 Great Neck Road
          Great Neck, New York  11021
          (516) 393-2200

8