```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
GRAND MANOR HEALTH RELATED FACILITY,   :
INC.,                                   :
                       Plaintiff,       :
     v.                                 :
                                        :
HAMILTON EQUITIES COMPANT, HAMILTON     :
EQUITIES, INC., ROBERT NOVA, SUZAN      : 12 Civ. 4916 (JGK)
CHAIT-GRANDT; MACRON & COWHEY. P.C.,    :
and JOHN MACRON,                        :
                       Defendants.      :
                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
HAMILTON EQUITIES COMPANY, HAMILTON     :
EQUITIES, INC., ROBERT NOVA, SUZAN      :
CHAIT-GRANDT; MACRON & COWHEY, P.C.,    :
and JOHN MACRON,                        :
                       Defendants/      :
                       Interpleading Plaintiffs, :
     v.                                 :
                                        :
BERKADIA COMMERCIAL MORTGAGE, LLC       :
and UNITED STATES DEPARTMENT OF         :
HOUSING AND URBAN DEVELOPMENT,          :
                                        :
                       Interpleaded     :
                       Defendants.      :
                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
HAMILTON EQUITIES COMPANY, HAMILTON     :
EQUITIES, INC., ROBERT NOVA, SUZAN      :
CHAIT-GRANDT; MACRON & COWHEY, P.C.,    :
and JOHN MACRON,                        :
                                        :
                       Defendants/      :
                       Third Party Plaintiffs, :
     v.                                 :
                                        :
GRAND MANOR HEALTH RELATED FACILITY,    :
GARFUNKEL WILD P.C., ROY W.             :
BREITENBACH, ESQ. and MARTIN LIEBMAN,   :
                                        :
                       Third Party Defendants. :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

**MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS THE AMENDED INTERPLEADER COMPLAINT AS TO DEFENDANTS, THE UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT (HUD)**

        **MACRON & COWHEY, P.C.**
        **Attorneys for Hamilton Equities Company,**
        **Hamilton Equities, Inc., Robert Nova and Suzan**
        **Chait-Grandt**

**January 4, 2013**

PRELIMINARY STATEMENT

In its 1st Memorandum of Law, (Doc. 26), HUD asked the Court to enter Summary Judgment compelling Hamilton Equities Company, Hamilton Equities, Inc., Robert Nova and Suzan Chait-Grandt ["Hamilton"] to pay $213,334 either to contractor G. Fazio Construction Company" or to "Berkadia Commercial Mortgage, LLC", leaving it to the Court to determine the proper policy with respect to HUD's reversal of a distribution it authorized to Hamilton from the Reserve for Replacement funds.  In its 2nd Memorandum of Law (Doc. 55), HUD asks this Court to find that HUD cannot be compelled to take action, where it has no obligation to act, and that it has no obligation to act in the circumstances presented herein.  HUD argues, in essence, that it has no nondiscretionary duties to Hamilton, and therefore the Interpleader Complaint, as amended, should be dismissed, either under Rule 12 (b) (1) or Rule 12 (b) (6).  While HUD asks the Court to rule that HUD has the right to choose to do nothing and that its regulatory mission is purely discretionary, we argue that HUD is nonetheless bound to perform its regulatory duties and that it has failed to do so.  Further, if the Court is inclined to make determinations that affect property rights of the parties, then it cannot ignore the deprivation that has resulted to Hamilton as a result of HUD's failure to act on Hamilton's requests for intervention and assistance, while at the same time, changing its position, to the detriment of Hamilton and in favor of Grand Manor Health Related Facility, Inc.

If the Court is going to determine whether or not HUD has a duty to Hamilton, we ask that consideration be given to the following: (1) that HUD has already acted to the detriment of

Hamilton; (2) that HUD has already assured Hamilton that it would undertake the review it now says it has no duty to perform (3) that HUD has, over the years, held conferences and meetings with Hamilton, Grand Manor Health Related Facility, Inc. and its predecessors as occupants of the regulated premises; (4) that HUD has acted as a regulator in the past, to determine the rights, obligations, and duties set forth in the Lease, the Lease Amendment and the Regulatory Agreements and (5) that HUD was the one who required the execution of the separate Regulatory Agreements by both the Owner and the Lessee.

HUD's failure to enforce compliance with the Regulatory Agreements coupled with its assertion that Hamilton has no standing to make a claim against it raise the suspicion that HUD is allowing default to loom because it would prefer to unload a 9.5% potential liability and/or to be released from having to deal with the cumbersome and difficult Owner/Operator split in this case. If HUD is permitted to continue its inaction, instead of enforcing the Regulatory Agreement, only Hamilton will be worse off.

## STATEMENT OF FACTS

For purposes of this Brief, we adopt the Factual Background as set forth in HUD's Memorandum of Law (Doc. 55), <u>with the following exceptions</u>: (1) We deny that Grand Manor Health Related Facility, Inc. is a signatory to the Lease, the Amended Lease or the Regulatory Agreement. These documents were signed by predecessor entities to Grand Manor Health Related Facility, Inc.; (2) We deny that HUD has no obligations under the Regulatory Agreements; and (3) We deny that Hamilton is neither a signatory to nor third party beneficiary of the Regulatory Agreements. Additionally, we supplement the factual background offered by HUD as follows: Grand Manor Health Related Facility, Inc., a corporation formed in 1991, is the

current operator of the nursing home business being conducted at 700 White Plains Road, Bronx, New York.  Grand Manor Health Related Facility, Inc.'s operations at 700 White Plains Road, Bronx, New York are subject to the regulatory authority of HUD.  Grand Manor Health Related Facility, Inc.'s current tenancy is pursuant to a Stipulation in the Bronx Court, dated in March, 2008, which Stipulation expires upon the determination by Justice Lucindo Suarez of a bench trial that was concluded in the Bronx court over a year ago.  Additionally we rely on the Affidavit of John J. Macron which supplies a factual history of communications between Hamilton and HUD.  Finally, we note, as also noted by HUD that, for purposes of the dismissal motions, all the facts alleged in our Amended Interpleader Complaint must be accepted as true.

LEGAL ARGUMENT

HAMILTON'S STANDING ARISES OUT OF THE FACT THAT IT IS A SIGNATORY TO A REGULATORY AGREEMENT AND PARTICIPANT IN A  REGULATORY SCHEME DESIGNED TO PROTECT IT AS A THIRD PARTY BENEFICIARY

Relying on McCall v. Chesapeake Energy Corp., 817 F. Supp. 2d 307, 313 (S.D.N.Y. 2011), HUD contends that Hamilton has no standing to enforce or seek relief arising from the Grand Manor Regulatory Agreement.  In McCall, the plaintiff was attempting to bring a class action suit and breach of contract claims regarding a number of wells, but she admittedly only had an interest in 3 of the wells.  Clearly, she had no rights arising out of the others.  The facts of that case differ from our case because, as noted in McCall, "[U]nder well-settled contract principles, only the parties to a contract have the right to complain of a breach of the contract, with the exception that a nonparty who proves the contract was made for his benefit, and that the contracting parties intended he benefit from the contract, may bring an action on the contract as a third party beneficiary." Citing Prize Energy Resources, L.P. v. Cliff Hoskins, Inc., --- S.W.3d --

4

--, 2011 WL 648996, at *6 (Tex. App. Feb. 23, 2011); accord Woolard v. JLG Indus., Inc., 210 F.3d 1158, 1169.

HUD's arguments that Hamilton has no standing because it is not a signatory to the Regulatory Agreement between HUD and Grand Manor Health Related Facility, Inc.'s predecessors, nor is it a third party beneficiary fail because (1) each of the Regulatory Agreements is on a HUD form—i.e. the terms of each of the agreements are part of HUD's regulatory scheme; (2) each of the Regulatory Agreements makes reference to language contained in or the provisions of the other Agreement; (3) the Regulatory Agreements are drafted in such a way as to operate in conjunction with each other and under the Lease; and (4) Hamilton Equities Company is specifically named in the Regulatory Agreement between HUD and Grand Manor as the Mortgagor and the Mortgagee is named in both Regulatory Agreements.

To the extent that HUD has accepted Grand Manor Health Related Facility, Inc.'s right to occupy the premises owned by Hamilton, it cannot fairly then say that Hamilton has no right or standing to seek HUD's assistance in enforcement of the Regulatory scheme designed and created by HUD, and tailored to the operation of a regulated business at the premises owned by Hamilton.  This scheme, effectuated through complementary inter-related and inter-dependent Regulatory Agreements, places HUD in the role of Umpire between the Lessee and the Owner to ensure that both are in compliance with their obligations to HUD, each other and the public interests HUD serves; both are treated fairly; and both work to mitigate HUD's risk of loss on the insured mortgage.  This scheme makes both Owner and Lessee third party beneficiaries of the other's Regulatory Agreement with HUD.

HUD urges the Court to find that Hamilton is not an intended beneficiary of the Regulatory Agreement between it and Grand Manor's predecessor. If that is true, then one must ask why was it made? Clearly the purpose of having Grand Manor sign the Regulatory Agreement was to ensure that Hamilton was properly compensated so that the mortgage could be paid. Hamilton owes the debt insured by HUD. HUD negotiated and executed a contract with Grand Manor that requires them to make payments sufficient to cover that debt. Hamilton's ability to pay the mortgage is conditioned on its receiving adequate rent payments from the nursing home's operations. Indeed, the Regulatory Agreement between Hamilton and HUD specifies that the Owner does not "assume personal liability for payments due under the note and mortgage, or for the reserve for replacement." HUD is willing to concede that "Hamilton may derive some incidental benefit from the provisions that obligate Grand Manor to make timely and adequate rent payments." However, HUD refuses to accept that the benefit is substantial and without it, Hamilton could not pay the Mortgage. HUD relies on Kinek v. Gulf & Western, Inc. 720 F. Supp. 275, 280 (SDNY), where it was noted that "the test for whether a third party is an intended beneficiary with standing to enforce a contract is derived from the Restatement and includes consideration of whether recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and ... 2 whether the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance", citing Davis v. United Air Lines, Inc., 575 F.Supp. 677, 680 (E.D.N.Y.1983) (quoting Restatement (Second) Section 302). HUD also relies on Griffith-Fenton v. Chase Home Fin., No. 11 CV 4877 (VB) 2012 WL 2866269, at *3 (SDNY May 29, 2012). Griffith-Fenton is inapplicable on both the facts and the law. In that matter, the plaintiff sought to recover as a third party beneficiary to a servicer participation agreement that the lender, Chase, had entered as part of its

intention to voluntarily participate in the HAMP program. The lender's failure to give plaintiff a permanent HAMP modification was found to be not actionable as the borrower/plaintiff was not a party to, nor a beneficiary of the contract between Chase and the government. The contract under which plaintiff in <u>Griffith-Fenton</u> sought recovery had no relation to the closing of her loan nor to the relationship that had existed between her and her lender, a predecessor to Chase. Further, Chase entered into the servicer participation agreement subsequent to plaintiff's obtaining her loan. This is vastly different from the transaction at issue here where HUD, Grand Manor, Hamilton and Redgor (Berkadia's predecessor) all entered into simultaneous agreements related to one closing.

Hamilton is not just merely an intended beneficiary, it is a signatory to the documents that all arise out of the loan transaction whereby HUD insured the mortgage. HUD's claim that Hamilton is without standing because it did not sign the Regulatory Agreement between HUD and Grand Manor's predecessor ignores the fact that the Agreements together constitute a part of an undertaking which HUD is charged by law with overseeing and by contract with insuring. However, HUD admits, on page 3 of its brief, that the purpose of having the Regulatory Agreements executed on October 4, 1978, was "to insure Grand Manor's and Hamilton's compliance with HUD's rules, policies and regulations." Notwithstanding this admission, HUD argues that only it may insist on compliance with the Agreements and that it has no duty "whatsoever" to Hamilton other than to provide mortgage insurance. HUD's assertion that it has no obligation "whatsoever" as a result of its execution of these Regulatory Agreements, ignores the fact that the Agreements contemplate the ongoing active involvement and participation by HUD. We urge the Court to reject the on again off again, *laissez-faire* approach

7

taken by HUD, as it results in a clear injustice to Hamilton. We ask for the right to pursue discovery and judgment on the claims raised in our Interpleader Complaint, as amended.

HUD'S CONTENTION THAT HAMILTON IS ATTEMPTING AN END RUN AROUND THE BRONX COURT FAILS BECAUSE NEITHER HUD NOR BERKADIA WERE PARTIES TO THE BRONX LITIGATION

HUD contends that Hamilton is trying to attempt an "end run" around the Bronx Court. Neither HUD nor Berkadia were parties to the matters tried in the Bronx. A determination of the Bronx matters in favor of Hamilton will not result in the relief we demand here against HUD being granted; nor will it result in a receiver being appointed by Berkadia, pending Grand Manor's appeal of an adverse decision in the Bronx. Similarly, a determination of the Bronx matters in favor of Grand Manor will not result in preclusion of HUD's power to initiate a review of rents or a preclusion of the appointment of a receiver by Berkadia. The relief we seek against Berkadia and HUD is separate and apart from the relief sought in the matters tried before Judge Suarez in the Bronx. Our clients' pursuit of remedies against Grand Manor in the Bronx trial does not preclude their reliance on the same facts to pursue remedies in this Court against other parties such as HUD and Berkadia. Indeed, when Hamilton tried to obtain relief of the nature sought here in the Bronx, Judge Suarez declined to decide the issues involving HUD because HUD was not a party. Judge Suarez instructed Hamilton to talk to HUD. See Affidavit of John Macron. The facts and evidence presented with that Affidavit demonstrate that Hamilton is entitled to seek the relief here sought against HUD. While HUD argues that the Amended Interpleader Complaint should be dismissed because Hamilton has failed to exhaust all other avenues of relief, the record shows otherwise. The facts set forth in the Amended Complaint and the information contained in the Affidavit of John Macron provide the details and background of Hamilton's attempts to obtain HUD's assistance. And as recognized, by Judge

Suarez's instruction to communicate directly with HUD and as also recognized in the case law cited by HUD, there is no official channel of "administrative remedies" within HUD.  See for example U.S. v. Livecchi 605 F. Supp. 2d 437, 445, 448 (2009); 607 F 2d 999 affd.  In that case, as here, the HUD officers and officials operated by way of meetings, discussions and letters. The way HUD has conducted itself with our client and Grand Manor Health Related Facility, Inc., as well as its predecessors, through the years is through telephone meetings, exchange of emails, personal meetings, etcetera. That is their procedure.  They are involved in the day to day operations as needed in an informal way.  The record shows that HUD is and was well aware of Hamilton's efforts to obtain the relief sought here.  HUD's current position along with its behavior over the last three years makes it clear that without a judicial directive to do so, they will never undertake the review Hamilton has requested.  HUD does not deny that it is bound by a covenant of good faith and fair-dealing.  As noted in Tractebel Energy Mrktg. Inc. v. AEP Power Mrktg., Inc., 487 F. #rd 89, 98 (2d Cir. 2007) , a case cited by the Livecchi  decision upon which HUD relies, every contract contains an implied covenant "embracing a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."  See U.S. v. Livecchi 605 F. Supp. 2d 437, 452 (W.D.N.Y. 2009) 607 F. 2d 999 affd.

HUD'S CONTENTION THAT THEY HAVE NO OBLIGATION TO TAKE A PARTICULAR ACTION FAILS UNDER THE FACTS OF THIS CASE, WHERE HUD IS IN THE ROLE OF AN INSURER AND REGULATOR

     HUD cites cases to bolster its claim that it has no obligation to take a particular action. HUD argues that it has no obligation to act based on  St. Christopher Associates L.P. v. United States,  511 F.3d 1376 (2008) ; U.S. v. Livecchi 605 F. Supp. 2d 437, 452 (W.D.N.Y. 2009) 607 F. 2d 999 affd;  and In re Carrington Gardens Associates, 248 B.R. 752 (Bankr. E.D. VA 2000).

9

Each of those case is distinguishable from this action.  In the matter of In re Carrington, a Bankruptcy proceeding, the Court found there was no breach of the Regulatory agreement in HUD's decision to deny a rent increase request and to deny release of funds that were requested.  We are not claiming a breach of contract but rather a failure to perform HUD's regulatory duties.  Additionally, in St. Christopher, the plaintiffs were seeking monetary damages from HUD.  In our case, we are asking only that HUD be compelled to exercise its powers to mitigate risks to the mortgage and the mortgagor.   While the plaintiffs in cases cited by HUD were complaining of discretionary actions taken by HUD and review of those actions, we are complaining of HUD's failure to act. HUD does not have discretion to cease to perform its regulatory function.  HUD argues that we are seeking mandamus. Mandamus seeks an order compelling a non-discretionary act to be performed.   We ask the Court to compel HUD to perform its regulatory duty pursuant to the terms of the contracts from which that duty arises.   More importantly, we seek the right to pursue our claims against HUD arising out of its failure to act.  As is seen in the exhibits to the Affidavit of John Macron, HUD's behavior has been confusing and often inconsistent.  It appears from the record that HUD communicated with all of the parties, but never took any action.  HUD promised to undertake a review, but never did so.  While HUD does have discretionary authority to choose whatever remedies it wishes, it cannot choose to abandon its role and function, and do nothing "whatsoever" all to the great detriment of Hamilton.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in our memoranda in reply to similar motions by Berkadia and Grand Manor it is respectfully requested that the Court deny HUD's motion to dismiss the Amended Interpleader Complaint.

Dated:	New York, New York
	January 4, 2013

                                                        Macron & Cowhey, P.C.
                                By:    */s/ John J. Macron*
                                         John J. Macron