UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HAMILTON EQUITIES COMPANY,
HAMILTON EQUITIES, INC., ROBERT
NOVA, SUZAN CHAIT-GRANDT,
MACRON & COWHEY, P.C., and JOHN
MACRON,

   Interpleading Plaintiffs,

   v.

BERKADIA COMMERCIAL MORTGAGE,
LLC, and the UNITED STATES
DEPARTMENT OF HOUSING AND
URBAN DEVELOPMENT,

   Interpleaded Defendants.

12 Civ. 4916 (JGK)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION TO DISMISS THE AMENDED INTERPLEADER
COMPLAINT AS TO DEFENDANT THE UNITED STATES
DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**

PREET BHARARA
United States Attorney for the
Southern District of New York
By: REBECCA S. TINIO
Assistant United States Attorney
86 Chambers Street, Third Floor
New York, New York 10007
Telephone: (212) 637-2774
Facsimile: (212) 637-2702
E-mail: rebecca.tinio@usdoj.gov

## TABLE OF CONTENTS

ARGUMENT ..................................................................................................................1

A.    HUD Has No General "Regulatory" Obligation to Referee the
      Parties' Disputes ..................................................................................................1

B.    Hamilton Does Not Have Standing to Enforce the Grand Manor
      Regulatory Agreement .........................................................................................3

C.    Hamilton Cannot State a Claim Against HUD Based on the Grand
      Manor Regulatory Agreement ..............................................................................7

CONCLUSION ................................................................................................................9

Interpleader Defendant the United States Department of Housing and Urban Development ("HUD"), by its attorney, Preet Bharara, United States Attorney for the Southern District of New York, respectfully submits this reply memorandum of law in further support of its motion to dismiss the Amended Interpleader Complaint as to HUD pursuant to Fed. R. Civ. P. 12(b)(1) or, in the alternative, 12(b)(6). As discussed further below, in their opposition, Interpleader Plaintiffs (together, "Hamilton") articulate no valid reason why the Court should not grant the requested relief to HUD.

## ARGUMENT

**A. HUD Has No General "Regulatory" Obligation to Referee the Parties' Disputes**

As an initial matter, Hamilton misstates the legal standard relevant to a motion to dismiss under Rule 12(b)(6) when it asserts that "all the facts alleged in our Amended Interpleader Complaint must be accepted as true." *See* Dkt. No. 63 (hereinafter "Hamilton Opp."), at 4. As discussed in HUD's opening brief, the Court must accept only "well-pleaded" allegations and need draw only "reasonable inferences" in Hamilton's favor; mere "conclusions of law or unwarranted deductions of fact" need not be accepted as true. *See* Dkt. No. 55 (hereinafter "HUD Mot."), at 6-7. Furthermore, the Court may consider not only the allegations in the Amended Interpleader Complaint, but also "documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010); HUD Mot. at 7. Therefore, the Court need not accept, for example, the Complaint's factual or legal characterizations of the Grand Manor Regulatory Agreement (HUD Mot., Ex. 3) ("Grand Manor Reg. Agmt."), because the Court can review and

1

construe the Agreement itself. *See, e.g.*, Am. Compl. ¶ 34 (containing conclusory legal assertions regarding Hamilton's standing under the Grand Manor Regulatory Agreement).

Turning to the substance of Hamilton's opposition, Hamilton repeatedly asserts that HUD has a generalized "regulatory" duty to intervene in these landlord-tenant disputes between the parties over issues such as rent calculation and lease assignment (which Hamilton admits have been the subject of state court litigation). Am. Compl. ¶¶ 26-28; Hamilton Opp. at 8. Hamilton even contends that HUD has an ongoing legal obligation to "participate" in the affairs of the Grand Manor facility. *See, e.g.*, Hamilton Opp. at 2 ("[W]e argue that HUD is . . . bound to perform its regulatory duties and that it has failed to do so"); *id.* at 7 (referring to the Grand Manor "loan transaction" as "an undertaking which HUD is charged by law with overseeing" and asserting that "the [Regulatory] Agreements contemplate the ongoing active involvement and participation by HUD").

Nowhere, however, does Hamilton identify the source of these supposed "regulatory duties," the "law" that purportedly charges HUD with oversight over Grand Manor, or the provisions in the Grand Manor or Hamilton Regulatory Agreements that "contemplate" HUD's "active" participation in the management of Grand Manor or the relationship between the parties. Simply put, Hamilton identifies no law, regulation, or contractual promise made by HUD for the Court to enforce. It is irrelevant that HUD has at times voluntarily assisted the parties with various issues appropriately within HUD's limited purview as the mortgage guarantor.[1]

---

[1] For example, it was entirely appropriate for HUD to express its view that Hamilton violated the Hamilton Regulatory Agreement when it refused to use certain funds disbursed from the Reserve Fund for Replacements (the "Fund") for the purpose which HUD directed – installing a new sprinkler system in the Grand Manor facility. *See* Dkt. No. 26. The Hamilton Regulatory

2

Hamilton Opp. at 3.  Hamilton provides no authority for the proposition that any of HUD's past discretionary actions legally bind it to referee the parties' future disputes, or – more to the point – obligate HUD to take the specific actions that Hamilton seeks to compel here.  In the absence of an identifiable legal or contractual obligation on HUD's part, the Court has no grounds to compel HUD to declare, as the Amended Interpleader Complaint requests, that Grand Manor is in default or to determine the amount of Grand Manor's rent.  *See* HUD Mot. at 5; Am. Compl. ¶¶ 37-42.

### B.  Hamilton Does Not Have Standing to Enforce the Grand Manor Regulatory Agreement

Hamilton also argues that it has standing to enforce the Grand Manor Regulatory Agreement, despite the fact that it did not sign the Agreement and is not identified as a third-party beneficiary thereof, because: (1) both the Hamilton and Grand Manor Regulatory Agreements are "on a HUD form"; (2) each Regulatory Agreement references the other; (3) the Agreements "operate in conjunction with each other and under the Lease"; and (4) Hamilton is mentioned in the Grand Manor Regulatory Agreement and the mortgagee (Regdor Corp.) is identified on both Agreements.  Hamilton Opp. at 5.  Construed generously, this argument appears to assert that the two Regulatory Agreements should be read together and that Hamilton should consequently be allowed to enforce Grand Manor's promises to HUD in the Grand Manor

---

Agreement expressly states that disbursements from the Fund "may be made only after receiving the consent in writing of [HUD]."  *See* HUD Mot., Ex. 2 ("Hamilton Reg. Agmt.") ¶ 2(a).  Therefore, HUD's approval or disapproval of the use of money from the Fund is explicitly contemplated by HUD's contract with Hamilton.  There is no basis for Hamilton's suggestion that HUD's action on the Fund issue somehow "obligates" it to take action with regard to other disputes between the parties, *see* Hamilton Opp. at 2, particularly where there is no express provision stating, for example, that HUD must (or even may) determine the correct amount of rent that Grand Manor must pay to Hamilton.  *See* Grand Manor Reg. Agmt. ¶ 3 (placing the burden on the parties to, if HUD requests it, renegotiate Grand Manor's rent).

Regulatory Agreement.[2]  This contention is incorrect and is belied by the terms of the two Agreements.

Under the relevant contract law, the two Regulatory Agreements should not be read together as a single contract, and certainly should not be read to permit Hamilton to compel HUD to take specific actions against Grand Manor pursuant to the Grand Manor Regulatory Agreement.  Although "writings which form part of a single transaction and are designed to effectuate the same purpose [must] be read together," *In re Lehman Bros. Holdings Inc.*, 479 B.R. 268, 279 (S.D.N.Y. 2012) (citation and internal quotation marks omitted), the Regulatory Agreements, by their express terms, do not effectuate the same purpose.  The Hamilton Regulatory Agreement binds Hamilton to a lengthy set of promises to HUD "[i]n consideration of the endorsement for insurance by [HUD] of the above described note," *see* Hamilton Reg. Agmt. at 1, while the Grand Manor Regulatory Agreement sets forth an entirely different (and much shorter) set of obligations owed by Grand Manor to HUD "[i]n consideration of the consent of [HUD] to the leasing of the aforesaid project by [Hamilton]," *see* Grand Manor Reg. Agmt. at 1.  Therefore, the two agreements have different purposes (and are supported by different consideration), and should not be read as a single contract.  *See, e.g.*, *In re Lehman Bros. Holdings*, 479 B.R. at 279 (holding that two contracts cannot be read together because they served different purposes).

Furthermore, neither Agreement incorporates the other or refers to the other for a missing term.  The Grand Manor Regulatory Agreement does mention the Hamilton Regulatory

---

[2] Hamilton appears to concede that, reading the Grand Manor Regulatory Agreement on its own, Hamilton is neither a signatory nor a third-party beneficiary thereof.  *See* HUD Mot. at 8-10.

Agreement (Grand Manor Reg. Agmt. ¶ 9, providing that Grand Manor will take over lease payments should Hamilton default on those payments), but the reverse is not true. This asymmetry is especially significant given Hamilton's allegations in this case – that Grand Manor has defaulted under the Grand Manor Regulatory Agreement and Hamilton is entitled to certain remedies as a result. However, while the Grand Manor Regulatory Agreement explicitly states what will happen if Hamilton defaults under the Hamilton Regulatory Agreement (Grand Manor assumes its lease payments), the event of a default under the Grand Manor Regulatory Agreement is not addressed at all in the Hamilton Regulatory Agreement (and no remedies or enforcement powers are accorded to Hamilton therein). For these reasons, the Regulatory Agreements should not be read together as a single contract.

     Even if the Court were to read the Regulatory Agreements together as part of one transaction, it would not follow that terms from the Grand Manor Regulatory Agreement would be imported into the Hamilton Regulatory Agreement and that Hamilton would have standing to enforce them. *See, e.g.*, *Lurline Gardens Ltd. Housing P'ship v. United States*, 37 Fed. Cl. 415, 420 (Cl. Ct. 1997) (in a case involving a HUD Regulatory Agreement, holding that "[t]he principle that writings are to be interpreted together merely ensures that the transaction as a whole be properly and consistently understood, not that all the obligations of a party to one writing be ascribed to all the parties to every other writing"); *Snyder v. Wells Fargo Bank, N.A.*, No. 11 Civ. 4496 (SAS), 2011 WL 6382707, at *5 (S.D.N.Y. Dec. 19, 2011) ("[W]hile multiple documents executed at the same time and concerning the same subject-matter are required to be read together under New York law, this does not mean that arbitration clauses – or any other particularized clauses – can be lifted from one document and transferred to another."); *Coleman*

5

*Co., Inc. v. Hlebanja*, No. 96 Civ. 1288 (MBM), 1997 WL 13189, at *7 (S.D.N.Y. Jan. 15, 1997) ("[E]ven if several contracts that constitute part of the same transaction are considered one contract, the different obligations within each contract may be independent and divisible."). There is no basis in the Regulatory Agreements, which consist entirely of promises made by Grand Manor and Hamilton to HUD in exchange for benefits conferred by HUD on those parties, to import promises made by Grand Manor to HUD in the Grand Manor Regulatory Agreement into the Hamilton Regulatory Agreement, to permit Hamilton to enforce them, or to transform them into enforceable promises by HUD to Hamilton.

     Hamilton asserts that "[c]learly the purpose of having Grand Manor sign the Regulatory Agreement was to ensure that Hamilton was properly compensated so that the mortgage could be paid." Hamilton Opp. at 6. Even if the Court were to accept that one of the purposes of paragraph 3 of the Grand Manor Regulatory Agreement is to ensure that the mortgage remain current, that would not confer third-party beneficiary status upon Hamilton, or give Hamilton the power to compel HUD to take actions against Grand Manor. As discussed in HUD's opening brief, HUD has its own policy and financial interests in the smooth and continued operation of the Grand Manor facility (including avoiding defaults), HUD Mot. at 9, and it is HUD's interests, not the parties', that are protected by the Regulatory Agreements; that is why only Grand Manor and Hamilton undertake obligations under the Regulatory Agreements, and HUD takes on none. *See* Grand Manor Reg. Agmt. at 1 (stating that <u>Grand Manor</u> agrees to the terms that follow); Hamilton Reg. Agmt. at 1 (stating that <u>Hamilton</u> agrees to the terms that follow). Any benefit that may flow to Hamilton from paragraph 3 of the Grand Manor Regulatory Agreement is entirely incidental. HUD Mot. at 9. Hamilton is not harmed by this arrangement,

6

as another document – the Lease - contains Grand Manor's promises to Hamilton and Hamilton's remedies if Grand Manor breaks those promises. *See id.* at 10 n.3.

### C. Hamilton Cannot State a Claim Against HUD Based on the Grand Manor Regulatory Agreement

Finally, Hamilton cannot state a claim against HUD based on the Grand Manor Regulatory Agreement, because nothing in the Agreement obligates HUD to take the actions that Hamilton seeks to compel. *See* HUD Mot. at 11-13. This reality constitutes an independent and sufficient ground to dismiss all claims against HUD.

Hamilton attempts to distinguish the cases cited in HUD's motion and to deny that it seeks mandamus relief by stating that "we are complaining of HUD's failure to act"; "HUD does not have discretion to cease to perform its regulatory function"; and "[w]e ask the Court to compel HUD to perform its regulatory duty pursuant to the terms of the contracts from which that duty arises." Hamilton Opp. at 10. Hamilton again fails to identify the source of HUD's supposed "regulatory function" or "regulatory duty," or even "the terms of the contracts" from which that purported duty arises. Also, contrary to Hamilton's assertion, <u>all</u> of the authorities cited by HUD involve claims that HUD failed to take a certain action – claims that were rejected by the court in every case. *See* HUD Mot. at 12; Hamilton Opp. at 10. Furthermore, Hamilton's request to the Court "to compel HUD to perform its regulatory duty" is the very definition of a mandamus action, which seeks "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." *See* 28 U.S.C. § 1361; HUD Mot. at 13. Hamilton cannot, however, make the required showing that HUD had "a clear nondiscretionary duty" to take the actions requested in the Amended Interpleader Complaint. HUD Mot. at 13.

7

The remaining arguments in Hamilton's opposition are meritless. Hamilton's citation of *Tractebel Energy Marketing, Inc. v. AEP Power Marketing, Inc.*, 487 F.3d 89, 98 (2d Cir. 2007), as well as Hamilton's passing reference to "a covenant of good faith and fair-dealing", are off the mark. Hamilton Opp. at 9. There is no allegation in the Amended Interpleader Complaint of a breach of an implied covenant of good faith and fair dealing, and Hamilton itself states that this is not a breach case. *See* Hamilton Opp. at 10. "New facts and allegations, first raised in a Plaintiff's opposition papers, may not be considered" in deciding a motion to dismiss. *Simone v. United States*, No. 09 Civ. 3904, 2012 WL 4891617, at *6 (E.D.N.Y. Oct. 9, 2012) (citations omitted). Further, Hamilton has made no effort to establish any such breach, which would require it to show fraud, malice, bad faith, other intentional wrongdoing, or reckless indifference to the rights of others. *See, e.g.*, *Dover Ltd. V. A.B. Watley, Inc.*, 423 F. Supp. 2d 303, 329 (S.D.N.Y. 2006). And, in addition to this failing, Hamilton's passing argument is meritless because HUD cannot be said to have covenanted with Hamilton under the Grand Manor Regulatory Agreement, since Hamilton is not a party to that Agreement.

Hamilton also insists that the Amended Interpleader Complaint is not an attempted "end run" around pending state court matters, in which the parties litigated the calculation of Grand Manor's rent and the validity of Grand Manor's assignment of the lease, because HUD was not a party to that litigation. Hamilton Opp. at 8-9. This argument is a red herring. While HUD is the nominal defendant in this action, the relief that Hamilton seeks ultimately affects Grand Manor's status as tenant. Hamilton asks the Court to order HUD to declare Grand Manor's default, and to determine the amount of Grand Manor's rent. HUD Mot. at 5; Am. Compl. ¶¶ 37-42. It is clear

that Hamilton is seeking to use the Court and HUD to achieve what it has not yet been able to effect through state court litigation.

Finally, Hamilton contends, in conclusory and speculative fashion, that HUD "will never undertake the review Hamilton has requested." Hamilton Opp. at 9. HUD's intentions or actions with regard to Hamilton's request for a rent review are irrelevant to the legal question of what, if anything, HUD is contractually obligated to do, and what the Court may compel HUD to do. Moreover, the Court should disregard the new allegations in Hamilton's opposition regarding HUD's supposed "position" or intentions regarding Hamilton's request for a rent review, including the Affidavit of John Macron. *See Simone*, 2012 WL 4891617, at *6; *see also Friedl v. City of New York*, 210 F.3d 79, 83-84 (2d Cir. 2000).

## CONCLUSION

For the foregoing reasons and the reasons stated in HUD's motion to dismiss the Amended Interpleader Complaint, HUD respectfully requests that the Court dismiss the Amended Interpleader Complaint as to HUD pursuant to Fed. R. Civ. P. 12(b)(1) or, in the alternative, 12(b)(6).

Date:   New York, New York
        January 18, 2013

                Respectfully submitted,

                PREET BHARARA
                United States Attorney for the
                Southern District of New York

By:   */s/ Rebecca S. Tinio*
      REBECCA S. TINIO
      Assistant United States Attorney
      86 Chambers Street, Third Floor
      New York, New York 10007
      Tel: (212) 637-2774
      Fax: (212) 637-2702
      rebecca.tinio@usdoj.gov